## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**KAI BIRD**,
Apt. 10 H North
2 Tudor City Place
New York, NY 10017

       Plaintiff,

   v.

**UNITED STATES DEPARTMENT OF
STATE**
2201 C St., NW
Washington, DC 20520

       Defendant.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Kai Bird, by and through his undersigned counsel, hereby alleges as follows:

1.     This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"

or the "Act"), for declaratory, injunctive, and other appropriate relief by Plaintiff against the

United States Department of State (the "State Department" or "Defendant").  Defendant has

unlawfully withheld agency records that were requested by Plaintiff pursuant to FOIA more than

three years ago.  Plaintiff is statutorily entitled to the disclosure of these records and Defendant is

improperly withholding them, in violation of the Act.

## PARTIES

*3.*     Plaintiff Kai Bird is a Pulitzer Prize-winning historian, journalist, and

biographer.  He is the author of numerous books, including *The Good Spy: The Life and Death of

Robert Ames*; *Crossing Mandelbaum Gate: Coming of Age Between the Arabs and Israelis,

1956-1978*; *The Color of Truth: McGeorge Bundy and William Bundy: Brothers in Arms*; and

*American Prometheus: The Triumph and Tragedy of J. Robert Oppenheimer*, for which he and his co-author were awarded a Pulitzer Prize in 2006.  Bird is currently writing a biography of President Jimmy Carter, under contract with Crown Publishers.

4.      Defendant United States Department of State is an agency of the federal government within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 702 that has possession, custody, and/or control of the records that Plaintiff seeks.  The State Department is headquartered at 2201 C Street NW, Washington, DC 20520, and may be served at the following address: The Executive Office, Office of the Legal Adviser, Suite 5.600, 600 19th Street NW., Washington DC 20522.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

### Background

7.      On February 5, 1992, the House of Representatives passed House Resolution 258, which created a task force (the "Task Force") to investigate allegations that campaign personnel for then-presidential candidate Ronald Reagan had "conspired with representatives of the Iranian government to delay the release of United States hostages until after the election, in exchange for the sale of arms to the government of Iran."  Joint Report of the Task Force to Investigate Certain Allegations Concerning the Holding of American Hostages by Iran in 1980 ("October Surprise Task Force"), H.R. Rep. No. 102-1102, at 2 (1993) (hereinafter, the "Task Force Report").

8.      The alleged "secret agreement" was purportedly made to prevent President Carter "from accomplishing an 'October Surprise', an election-eve hostage release that would likely have bolstered his campaign." *Id.*

9.      The Task Force's investigation, led by Representative Lee H. Hamilton, included interviews of more than 230 people and the review of "tens of thousands of documents" from executive branch agencies. *Id.* at 5.

10.     Yet the Task Force "did not resolve every single one of the scores of curiosities, coincidences, sub-allegations or unanswered questions that have been raised over the years and become part of the October Surprise literature." *Id.* at 6.

11.     One of the central questions in the investigations concerning the so-called October Surprise is the whereabouts of the Reagan campaign's manager, William "Bill" Casey, in July and August 1980.

12.     As described by the Task Force Report, it was alleged that "during the summer of 1980, William Casey and other Americans met on several occasions in Madrid with Cyrus and Jamshid Hashemi and with two Iranian officials sent at the direction of the Khomeini regime, and that a deal was struck to delay the release of Americans being held hostage in Iran." *Id.* at 71.

13.     One of the meetings between Casey and representatives of Iran in Madrid, Spain is alleged to have taken place around the time that Casey flew to London, England to attend a conference on World War II.

14.     The Task Force Final Report, however, "found no evidence establishing that Reagan campaign manager William J. Casey was in Madrid rather than in London attending a conference." *Id.* It states that "the evidence allegedly supporting each of these meetings [in Madrid] was neither from credible sources nor corroborated." *Id.*

15.     In or around 2013, author Robert Perry published a memorandum he obtained

from the George H.W. Bush Presidential Library dated November 4, 1991 that was authored by

then-Deputy White House Counsel Paul Beach (the "Beach Memo").  *See, e.g.*, Kai Bird, *Some*

*'October Surprise' Conspiracies Turn Out to be True*, L.A. Times (Jun. 20, 2017),

https://perma.cc/8F8U-DU9L.  A true and correct copy of the first page of the Beach Memo is

attached hereto as Exhibit A.

16.     The Beach Memo's subject line reads "Meeting with Ed Williamson – October

Surprise."  Ex. A.  Edward ("Ed") Williamson was, at the time, an attorney with the State

Department.

17.     The Beach Memo states, *inter alia*:

> I began the meeting by indicating that we were in the process of considering
> what arrangements, if any, should be made to ensure that we have an accountable
> focal point to keep the President informed regarding issues and information of
> significance as the October Surprise investigations request and receive Executive
> Branch Information. . . .
>
> Ed responded first by describing State's document collection efforts to date.
> He noted that document collection should be completed by the end of this week,
> and that documents seem to fall into three categories:
> --     material potentially relevant to the October Surprise allegations.  In
>        this regard, Ed mentioned only a cable from the Madrid embassy
>        indicating that Bill Casey was in town, for purposes unknown.
> [. . .]

Ex. A.

18.     The "cable" referenced in the Beach Memo concerning Casey, (hereinafter, the

"Madrid Cable") is not mentioned in the Task Force Final Report.

19.      Upon information and belief, the Madrid Cable was not provided to the Task

Force during the investigation that resulted in the Task Force Final Report.

20.     Casey died on or around May 7, 1987.

21.     On or about December 1, 2016, Representative Hamilton sent a letter to then-

Secretary of State John Kerry, recounting the discovery of the Beach Memo and requesting a copy of the Madrid Cable.  A true and correct copy of that letter is attached as Exhibit B.

22.     Upon information and belief, Representative Hamilton did not receive a copy of the Beach Memo in response to his letter.

### Plaintiff's FOIA Request

23.     On or about July 14, 2016, Kai Bird submitted a FOIA request to the State Department via mail (the "Request") for a copy of the Madrid Cable.  A true and correct copy of the Request is attached hereto as Exhibit C, and is incorporated by reference.

24.     Specifically, the Request sought "a cable sent from the US embassy in Madrid, Spain to the State Department in the time period July 1, 1980—August 31, 1980; the cable reports on or mentions briefly the visit to Madrid of a private citizen, William J. Casey, or 'Bill Casey,' who at the time was the campaign manager for the Republican Party's presidential nominee, Ronald Reagan."  Ex. C.

25.     The Request noted that the Madrid Cable might be found in a daily or weekly report of some kind from the Madrid embassy, possibly in the State Department's embassy cable database.  It also noted that it could be found in the papers of Edward Williamson.  *Id.*

26.     The Request asked for expedited processing.  *Id.*

27.     The State Department confirmed receipt of the Request by letter dated July 20, 2016, and assigned it tracking number F-2016-08342.  The State Department subsequently denied expedited processing of the Request.

28.     On or about August 19, 2016, Bird filed an administrative appeal regarding the State Department's denial of expedited processing.

29.     By letter dated September 1, 2016, the State Department affirmed its denial of

expedited processing for the Request.

30.     On or about June 26, 2019, Bird sent a letter to the State Department requesting an update on the Request.

31.     Bird has not received a response to his June 26, 2019 letter or any subsequent communication concerning the Request.

32.     As of the filing of this Complaint, it has been approximately 1,167 days—more than three years—since the Request was submitted.

33.     Bird has not received a determination from the State Department with respect to the Request, nor has the State Department released any responsive records or portions thereof. Nor has the State Department cited any basis for refusing to release records.

## CAUSES OF ACTION

### Count I: Violation of FOIA for Failure to Comply with Statutory Deadlines

34.     Plaintiff repeats and re-alleges paragraphs 1–33.

35.     Defendant is an agency subject to FOIA.

36.     By the Request, Plaintiff properly asked for records within the possession, custody and/or control of Defendant.

37.     The Request complied with all applicable regulations regarding the submission of FOIA requests.

38.     Defendant failed to make a determination with respect to the Request within the statutory deadlines as required by FOIA.  5 U.S.C. § 552(a)(6)(A).

39.     Defendant's failure to make a determination with respect to the Request within FOIA's statutory deadlines violates Defendant's obligations under FOIA.  *Id.*

40.     Plaintiff has and/or is deemed to have exhausted applicable administrative

remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(C)(i).

### Count II: Violation of FOIA for Improper Withholding of Agency Records

41.     Plaintiff repeats and re-alleges paragraphs 1–33.

42.     Defendant is an agency subject to FOIA.

43.     Through the Request, Plaintiff properly asked for records within the possession, custody and/or control of Defendant.

44.     The Request complied with all applicable regulations regarding the submission of FOIA requests.

45.     Defendant has not released any records or portions thereof in response to the Request.

46.     Defendant has not cited any exemptions to withhold records or portions thereof that are responsive to the Request.

47.     Defendant has not identified whether or how disclosure of each of the records or portions thereof sought by the Request would foreseeably harm an interest protected by a FOIA exemption and/or why disclosure is prohibited by law.  5 U.S.C. § 552(a)(8)(A).

48.     Defendant has improperly withheld records responsive to the Request in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

49.     Plaintiff has and/or is deemed to have exhausted applicable administrative remedies with respect to the Request.  5 U.S.C. § 552(a)(6)(C)(i).

### <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that the Court:

1)   order Defendant to immediately process the Request;

2)   order Defendant to conduct searches to identify all records responsive to the Request;

3) issue a declaration that Plaintiff is entitled to disclosure of the records sought by the Request;

4) enjoin Defendant from withholding all records or portions thereof responsive to the Request that are not specifically exempt from disclosure under FOIA;

5) award Plaintiff reasonable attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

6) grant all such other relief as the Court may deem just and proper.

Dated:  September 24, 2019

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
D.C. Bar No. 1026115
Email: ktownsend@rcfp.org
Adam A. Marshall
D.C. Bar No. 1029423
Email: amarshall@rcfp.org
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

*Counsel for Plaintiff*